F. MICHAEL DAILY, JR., ESQ.
NJ ATTORNEY ID #011151974
F. MICHAEL DAILY, JR., L.L.C.
216 Haddon Avenue - Sentry Office Plaza
Suite 106
Westmont, New Jersey 08108
(856) 833-0006
Attorney for Plaintiff

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

| | |
|---|---|
| NICO ELECTRICAL CONTRACTOR, INC., and MARSHALL B. WILLIAMS, : :  : Plaintiffs, : vs. : : CITY OF CAMDEN, EUGENE EMENECKER, WILLIAM REVAITIS, JAMES RIZZO, and IRAIDA AFANADOR, : : : Defendants. | CIVIL ACTION NO. 1:13-cv-06353 (JHR-AMD)  Civil Action |

---

PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY

JUDGMENT

---

**TABLE OF CONTENTS**

**PAGE**

Table of Citations . . . . . . . . . . . . . . . . . iii

Procedural History . . . . . . . . . . . . . . . . . 1

Material Facts . . . . . . . . . . . . . . . . . . . 2

Legal Argument . . . . . . . . . . . . . . . . . . . 15

Standard of Review . . . . . . . . . . . . . . . . . 15

Point 1 . . . . . . . . . . . . . . . . . . . . . . 15

      The Elements of a Claim of Unconstitutional
      Retaliation . . . . . . . . . . . . . . . . . 15

Point 2 . . . . . . . . . . . . . . . . . . . . . . 17

      It is Admitted That No Claims May Be Asserted
      for incidents That Occurred Before October 24,
      2011. However, Same Still constitutes
      Background Evidence in Support of His Present
      Grievances . . . . . . . . . . . . . . . . . . 17

Point 3 . . . . . . . . . . . . . . . . . . . . . . 18

      Plaintiffs Did engage In Constitutionally
      Protected Conduct . . . . . . . . . . . . . . 18

Point 4 . . . . . . . . . . . . . . . . . . . . . . 20

      The Defendants Do Not Argue That the Actions
      of Which the Plaintiff Complains Could Not
      Constitute Retaliation . . . . . . . . . . . . 20

Point 5 . . . . . . . . . . . . . . . . . . . . . . 20

      Material Issues of Fact Exist as to Whether
      There was a Casual Connection Between the
      Protected Activity and the Retaliatory
      Actions . . . . . . . . . . . . . . . . . . . 20

Point 6 . . . . . . . . . . . . . . . . . . . . . . 22

i

Giving the Plaintiff All Reasonable Inferences a Jury Could Find that Co Rizzo and Dir. Afanador as Supervisors Acquiesced in the Conduct of the Inspectors . . . . . . . . . . . . . .   22

Point 7 . . . . . . . . . . . . . . . . . . . . . . . . . .   23

The Individual Defendants Are Not Entitled to Qualified Immunity . . . . . . . . . . . . . . . .   23

Point 8 . . . . . . . . . . . . . . . . . . . . . . . . . .   24

Material Issues of Fact Exist as to Whether Camden Had a Custom of  Hindering Nonunion Contractors Who Had Previously Been Union Members . . . . . . . . . . . . . . . . . . . . . . .   24

Conclusion  . . . . . . . . . . . . . . . . . . . . . . . .   26

## TABLE OF CITATIONS

PAGE

**CASES**

Anderson v. Davilla,
125 F.3d 148, (3d Cir.1997) . . . . . . . . . . . . . . . 15,16,17

Anderson v. Creighton,
483 U.S. 635 (1987) . . . . . . . . . . . . . . . . . . . 23

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242, S.Ct. 2505, 91 L.Ed.2d 202 (1986) . . . . . . . 15

Assaf v. Fields,
178 F3d 170 (3rd Cir. 1999) . . . . . . . . . . . . . . . 24

Connick v. Myers,
461 U.S. 138, S. Ct. 1684, 75 L.Ed2d 208 (1983) . . . . . . . 19

C.N. v. Ridgewood Bd. of Educ.,
430 F.3d 159, (3d Cir. 2005) . . . . . . . . . . . . . . . 15

Farrell v. Planters Lifesavers Co.
206 F.3d 271,(3d Cir. 2000) . . . . . . . . . . . . . . . 21

Harlow v. Fitzgerald,
457 U.S. 800, (1982) . . . . . . . . . . . . . . . . . . 23

Hill v. City of Scranton,
411 F.3d 118,(3d Cir. 2005) . . . . . . . . . . . . . . . 17

Krouse v. American Sterilizer Co.,
126 F.3d 494,(3rd Cir. 1997) . . . . . . . . . . . . . . . 21

Nat'l R.R. Passenger Corp. V. Morgan,
536 U.S. 101, S. Ct. 2061, 2072, 153 L.
Ed. 2d 106 (2002) . . . . . . . . . . . . . . . . . . . 18

Labov v. Lalley,
809 F.2d 220,(3d Cir.1987) . . . . . . . . . . . . . . . 16,18

Lauren W. Ex rel. Jean W. V. DeFlaminis,
480 F3d 259, 267 (3rd Cit. 2007)  . . . . . . . . . . . . 20

Lee v. The Cnty of Passaic,
No. 2:09-cv-5735 SDW, 2011 WL 3159130 . . . . . . . . . . 18,19

Mitchell v. Horn,
318 F.3d 523, 530 (3rd Cir. 2003) . . . . . . . . . . . . .   20

Monell v. Department of Social Services of City of New York,
436 U.S. 658,(1978) . . . . . . . . . . . . . . . . . . . .   24

Natale v. Camden County Correctional Facility,
318 F.3d 575,(3rd Cir., 2003) . . . . . . . . . . . . . . .   25

O'Hare Truck Serv., Inc. v. City of Northlake,
518 U.S. 712, 116 S.Ct. 2353, 135 L.Ed.2d 874 (1996) . . . .   16

Rode v. Dellarciprete,
845 F.2d 1195, (3d Cir. 1988) . . . . . . . . . . . . . . .   22

Smith v. Arkansas State Highway Emp., Local 1315,
441 U.S. 463, 99 S. Ct. 1826, 1828, 60 L.
Ed. 2d 360 (1979) . . . . . . . . . . . . . . . . . . . . 16,18

Sterling v. Borough of Minersville,
232 F.3d 190, (3rd Cir. 2000) . . . . . . . . . . . . . . .   23

Thomas v. Independence Twp,
463, F3d 285, 296 (3d Cir. 2006) . . . . . . . . . . . . . .   20

Tolan v. Cotton,
134 S. Ct. 1861, 1863 (2014) . . . . . . . . . . . . . . . .   15

Woodson v. Scott Paper Co.,
109 F3d 913, 920-21 (3d Cir. 1997) . . . . . . . . . . . . .   21

**STATUTES**

Fed. R. Proc. 56   . . . . . . . . . . . . . . . . . . . . .   15

iv

**PROCEDURAL HISTORY**

The Plaintiff, Marshall Williams, is a former member of the International Brotherhood of Electrical Workers ("IBEW"). He has brought the present action pursuant to 42 U.S.C. § 1983 asserting that because he left that union and has worked through his small company, Nico Electric, as a nonunion contractor, he has been subjected under color of state law to adverse treatment. He further asserts that these adverse actions violate his right to association as guaranteed by the First Amendment. *Complaint [Doc. 1].*

The Defendants presently move for summary judgment to dismiss the complaint and the Plaintiffs oppose same.  In doing so the Plaintiffs contend that they have demonstrated direct evidence of bias against nonunion electrical contractors by the City of Camden and because the Defendants have come forward with no evidence to establish any legitimate reasons for the adverse actions at issue, the motion must be denied.

-1-

**MATERIAL FACTS**

The Plaintiffs' pursuant to Local R. Civ. Rroc. 56.1, herewith respond to the Defendants' Statement of Material Facts.

1.  Admitted.

2.  Admitted.

3.  Admitted.

4.  Admitted.

5.  Admitted.

6.  Admitted.

7.  Admitted.

8.  Admitted.

9.  Admitted.

10. Admitted.

11. Admitted.

12. Admitted that Revaitis testified that he never had any conversations with CFO Feliciano. However, this is a self serving statement that calls for a credibility determination and hence a "fact" that a jury would not be required to accept.

13. Admitted.

14. Admitted.

15. Admitted.

16. Admitted.

17. Admitted.

18.  Admitted.

19.  Admitted.

20.  Admitted.

21.  Admitted.

22.  Admitted.

23.  Disputed in that the exact testimony was:

> "He's mentioned that particular comment [about the union] four or five times; how you making out dealing with the union? And I told him, the only problem I have every now and then I'd run into Donald [Norcross] and Donald pulled out after a while. That was it." *111-13 to 17.*

Furthermore the testimony was ambiguous as to whether the "union" comments by Revaitis ever occurred after 2004: "So <u>from</u> 2002 to 2004 I believe you said there was three to four times Mr. Revaitis made that comment about – A That's correct." *Id. 18 to 21.*

24.  Disputed.  Plaintiff testified that Inspector Emenecker made two negative comments about plaintiff's non-union status. However, Plaintiff did not concede that Emenecker's two comments constituted the sum total of his disparate treatment evidence.

25.  Admitted that Fact 25 accurately paraphrases plaintiff's testimony.  However, plaintiff challenges the relevance of this statement since the question: "Have you ever had any problems with the union since being awarded this bid?" is unduly vague.

26.  Admitted.

-3-

27.  Admitted.

28.  Admitted.

29.  Admitted.

30.  Admitted.

31.  Admitted.

32.  Admitted.

33.  Admitted.

34.  Admitted.

35.  Admitted.

36.  Admitted.

37.  Admitted.

38.  Admitted.

39.  Disputed.  Rizzo testified that this was the first time that Rizzo became aware of plaintiffs' complaint.  *Def. Exhibit 5 at 9:3-15.*

40.  This "fact is compound and confusing.  What Plaintiff testified was that when failing a job, state law requires the inspector to give a specific code section specifying the reason for the failure.  Plaintiff further testified that in the event a job were wrongfully failed, state law then would require the City to send a notice to the owner correcting the error and acknowledging that the work did, in fact, meet code. *Def Exhibit 2 at 127:22 to 129:24.*  See also *Def. Exhibit 8, January 3, 2013 email from Rizzo to plaintiff,* quoted in

response to ¶ 41 *infra*.

41. Objection, necessary words are omitted from the quotation. The January 3, 2013 email actually reads: "I told you that I would speak to the electrical inspector and have him either provide a code section to support his decision or reverse it."

42. Admitted.

43. Admitted only to the extent that emails from plaintiff Williams in Exhibits 8 and 9 do not furnish the detailed account of misconduct which Rizzo requested. The remainder of Fact 43 appears to be unsupported.

44. Disputed. Fact 44 does not fairly convey the meaning of the testimony being paraphrased. When Rizzo questioned Emenecker, Emenecker denied that a dispute with Williams had occurred. *Id.*

45. Admitted.

   **2.   931 South 7th Street**

46. Admitted.

47. Admitted.

48. Admitted.

49. Admitted.

50. Admitted.

51. Misleading paraphrase. Williams testified that the owner's continued use of an old knob and tube circuit, which was not included within the scope of Williams' new work, caused the

circuit breaker to trip out.  Williams also testified that before failing the job, the inspector did not bother to ascertain the cause of the tripped circuit breaker.  *Def. Exhibit 2 at 141 :21 to 142:5.*

52. Admitted.

53. Admitted.

54. Admitted.

55. Misleading paraphrase.  Revaitis testified that 1) he did not issue a red sticker; 2) the 2nd floor had no lights and the breaker would not reset and 3) Williams might have said that those issues were outside the scope of his work.

56. Admitted.

57. Admitted.

58. Admitted.

59. Admitted.

60. Objection, hearsay.  The October 8, 2013 handwritten statement of Ayana Jordan is unsworn hearsay and does not comply with Fed. Rule Civ. Proc. 56(c)(4) or 28 U.S.C. § 1746.

61. Admitted.

62. Admitted.

63. Admitted.

64. Admitted

65. Admitted.

66. Admitted.

67.  Admitted.

68.  Admitted.

69.  Admitted.

70.  Admitted.

71.  Admitted that Williams prepared a statement for Ms. Holland to sign, but disputed that this fact is material.   Attorneys prepare statements for witnesses to sign all the time. However, the remainder of Fact 71 is disputed because it is based on the inadmissible and unsworn statement of Bernice Holland, which statement is hearsay and fails to comply with Fed. Rule. Civ. Proc. 56(c)(4) or 28 U.S.C. § 1746. Accordingly, the Holland statement should not be considered on a motion for summary judgment.

72.  Admitted.

73.  Admitted except to state that the later contradiction is immaterial since Emenecker acknowledged being the inspector on the job.

74.  Admitted.

75.  Disputed, unsupported.  No citation is provided for "Tony's" legal first or last name.

76.  Admitted.

77.  Admitted, however, Defendant Revaitis' denial only creates a material issue of disputed fact.

78.  Disputed, unsupported.

79. Disputed.   Williams testified that he did not believe that Cassidy had ever been a member of the electrical union.

80. Disputed.   Immaterial.  Plaintiff testified that the wrongful act was Revaitis' encouraging a customer not to use plaintiffs' services.

81. Admitted.

82. Admitted, except to note that Exhibit 17 is incomplete.  It fails to include 6 pages of attachments.

83. Admitted.

84. Admitted.

85. Admitted but incomplete.  Verbos testified that Williams also complained that the inspectors were recommending other contractors.  *Def's Exhibit 18, 9:7-13.*

86. Admitted.

87. Objection, Fact 87 is generalized and incomplete.  Admitted that Mr. Verbos told ESCO Revaitis and an electrical inspector that if they failed a job they were required to provide a specific code citation.   However, Mr. Verbos also told Revaitis and the electrical inspector that they were not allowed to cite Mr. Williams for work which Williams did not do:

> "I discussed the fact that Mr. Williams complained that they weren't giving him code cites and they are required to do that. I discussed the fact that if there was work done that Mr. Williams didn't do, they cannot cite him, and there was a rehab issue. I'm not sure what it was. It would have been something that they did in

rehab which was not required. They were requiring something that was taken out of the rehab." *Def. Exhibit 18, 17:14-22. See also 9:3-20.*

88. Objection, confusing and misleading. Verbos testified that the inspectors are required to approve or fail, nothing more; and if they approve the job they must issue an approval sticker. *See Def. Exhibit 18, 13:14-15:10.* If they fail it they have to give a reason when they fail it. *Id 38-9 to 25.* The remainder of Fact 88 is disputed as not having support in the record.

89. Admitted that Verbos testified that inspector demeanor was a local issue. But Fact 89 is materially incomplete. Verbos testified that if there was more to it than just demeanor: "The other things, if there was enough, that it would become official misconduct, we could look at it." *Def. Exhibit 18, 9:23-25.*

90. Disputed, incomplete. Verbos testified that "official misconduct" (as opposed to an issue limited to demeanor) would have required DCA action. Verbos also testified that he discussed Williams' allegations of official misconduct by defendants Revaitis and Emenecker with Gangeruse, and Verbos and Gangeruse agreed that Williams' allegations did not rise to the level where DCA action should be taken. *(See Exhibit 18, 22:19-20 ("we didn't feel they came up to the level that we should take action ...").)*

D.   **Plaintiff's Complaint to Mr. Rizzo & Director Afanador**

91. Objection, defendants' paraphrase of plaintiff's contentions is misleading and incomplete.   Plaintiff contends that the inspectors had failed properly completed jobs several times, and each time they gratuitously told the customer to find a better contractor next time because Williams was not a good electrical contractor.   Williams testified that the City's ultimate grant of approval -- obtained only after Williams complained to higher officials and after an unnecessary delay to the customer -- was inadequate to correct the damage to Williams' reputation caused by the inspectors' repeated official misconduct. *Def. Exhibit 2, 99:3-102:20.*

*92.* Admitted.

93. Admitted.

94. Disputed because Fact 94 calls for speculation, but admitted that plaintiff testified that he did not believe an investigation would have been undertaken in good faith if he had detailed his complaint in writing prior to meeting in person with the Director.

95. Admitted.

96. Admitted.

97. Admitted.

98. Disputed.   First, the citation given to Director Afanador's testimony only refers to one citation, not to the full scope

-10-

of plaintiffs' complaint.  Director Afanador did not have a

present recollection of all of the jobs Williams complained

about.  Second, Director Afanador's testimony is unreliable

because, what little testimony she gave was vague, speculative

and qualified by multiple admissions as to her inability to

remember:

"Q. What information did Jimmy get back to you with,
if any? A. **If memory serves me**, he said that Mr. Nico
was not failed. What was indicated was that he was told
that certain, a certain box was not put in right, and he
was given advice from the subcode as to how it needed,
something needed to be done. **I can't really remember
what it was at that time.**  But I remember Jim said, we
didn't fail him.  Subcode Revaitis just asked him to fix
something, and he said he would. Q. So that involved one
particular property?  A. To my knowledge, yes." *Def.
Exhibit 6, 14:10-21.*

See also:

"Q. What was his complaint regarding the funeral
home? A. **I do not remember. I really don't.** *Id, 15:4-6.*

See also:

"A. I asked him to give me information as to, you
know, what his complaint was. **And I don't remember if in
fact he did give me a complaint, to be honest.** *Id, 16:6-
8.*

99.  Disputed. Fact 99 is unsupported by the record citations.  In

addition, Fact 99 is disputed as immaterial.  The issue being

litigated is whether the initial inspection failure was

official misconduct motivated by anti-union animus.  The fact

that Williams' work was eventually approved each time -- but

only after an unnecessary delay to Williams' customers, and a

-11-

complaint by Williams to the City -- is immaterial.   The harm to Williams and Nico Electric had already been done.

100. Admitted that Director Afanador testified that she called the owner of the Tattoo Shop (Mr. Miller) who confirmed that ESCO Revaitis told Miller that, if Miller needed additional work, Revaitis recommended another contractor, a "good old boy" by the name of George Cassidy as opposed to calling plaintiffs. *See Defendant's Fact 76.*

101. Admitted that Director Afanador attempted to place obstacles in front of any investigation.   The remainder of Fact 101 is disputed hearsay.

102. Disputed.   Exhibit 20, an email embedded in an email purportedly from Director Afanador to ESCO Revaitis is hearsay within hearsay.

103. Admitted.

104. Disputed.   The testimony of CO Rizzo (*Def's Exhibit 5*) about what Customer Jordan (a non-party) said on the telephone is hearsay.   The testimony of Director Afanador (*Def's Exhibit 6*) about what Customer Jordan (a non-party) said on the telephone is also hearsay.

105. Plaintiff admits that Director Afanador testified that Afanador requested a statement from Customer Jordan.   However, the remainder of Fact 105 is disputed as hearsay.

106. Disputed.   Customer Jordan's purported statement is unsworn

hearsay and fails to comply with Fed. Rule. Civ. Proc. 56(c)(4) or 28 U.S.C. § 1746. Fact 106 is also improper in asking plaintiff to admit or dispute defendants' legal argument premised on disputed hearsay. Accordingly, no response is required.

107. As the statements of Jordan cannot be properly considered in determining this motion because they are hearsay, Mr. Williams explanation for them is irrelevant.

108. Disputed. Defendant's paraphrase is incomplete and mischaracterizes plaintiff Williams' testimony in that what he actually said was:

> "Q And what took place in that conversation? A I says -- I asked her, I says, what's the status? Have we made any progress? And she went on the attack on me, she says, oh, my inspectors have done an excellent job, you're the problem. That's how she came off. And so I turned around and said to her -- she didn't like what I said -- I said, I understand your position, you're the director and it's only fitting that you take that position because it makes it look like you don't have any control over of your office. *See Def. Exhibit 2, 186:14-25.*

109. Plaintiff admits that Afanador concluded that her inspectors had not engaged in wrongdoing. However, Fact 109 infers that Afanador's investigation was complete and impartial. Such an inference is not supported by the record and is disputed. *(See response to Fact 98 where plaintiff provides three examples of Director Afanador's inability to recollect facts material to the scope of Afanador's investigation.)* In

addition, Director Afanadaor testified:

"Q. Anybody else that you talked to or got information from as part of your investigation other than your staff? A. Mr. Williams could not provide me with anyone else **that I could recall**. He just said, those two people, and then he mentioned someone from DCA. **I don't remember the name of the person from DCA**." Def. Exhibit 6, 22:12-18.

As suggested by Williams' testimony in Fact 108 and by Afanador's lack of recollection on key issues, Afanador had a motive to vindicate her own inspectors.

**LEGAL ARGUMENT**

**Standard of Review**

A party is entitled to summary judgment if it can establish that there exist no issues of material fact and it is entitled to judgment as a matter of law. <u>Fed. R. Proc.</u> 56. However, "[In] ruling on a motion for summary judgment, '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" <u>Tolan v. Cotton</u>, 134 S. Ct. 1861, 1863 (2014). Quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Furthermore, where a court fails to credit evidence that contradicts some of its key factual conclusions, it improperly weighs the evidence. <u>Tolan v. Cotton</u>, *id.* Finally, "summary judgment may not be granted, however, if there is a disagreement over what inferences can reasonably be drawn from the facts even if the facts are undisputed." <u>C.N. v. Ridgewood Bd. of Educ.</u>, 430 F.3d 159, 173 (3d Cir. 2005).

**Point 1**

**The   Elements   of   a   Claim   of
Unconstitutional Retaliation**

"The Supreme Court has explicitly held that an individual has a viable claim against the government when he is able to prove that the government took action against him in retaliation for his exercise of First Amendment rights." <u>Anderson v. Davilla</u>, 125 F.3d 148, 160 (3d Cir.1997).  Furthermore this encompasses a citizen's

exercise of the right of association, <u>O'Hare Truck Serv., Inc. v. City of Northlake</u>, 518 U.S. 712, 721, 116 S.Ct. 2353, 135 L.Ed.2d 874 (1996), and the right to be or not be a member of a union has been recognized as an associational right covered by the First Amendment. <u>Smith v. Arkansas State Highway Emp., Local 1315</u>, 441 U.S. 463, 465, 99 S. Ct. 1826, 1828, 60 L. Ed. 2d 360 (1979).("The public employee surely can associate and speak freely and petition openly, and he is protected by the First Amendment from retaliation for doing so."). See also <u>Labov v. Lalley</u>, 809 F.2d 220, 222–23 (3d Cir.1987). ("Plainly efforts of public employees to associate together for the purpose of collective bargaining involve associational interests which the first amendment protects from hostile state action.")

In this matter Marshall Williams claims that because he chose to leave the IBEW and later work in the City of Camden as a nonunion contractor he suffered retaliation form the City and its officials on account of the political influence of the IBEW.[1] In order to prove this he must show that first, that he engaged in protected activity; second, that the City and /or its officials responded with retaliation; and third that his protected activity was the cause of the Government's retaliation. <u>Anderson v. Davila</u>, *supra* at 161 (3d

---

[1]It is a matter of judicial notice that Donald Norcross the Business Agent of the IBEW became a member of the New Jersey Legislature representing the City of Camden and more recently has become a member of Congress with the City being part of the District that he represents.

Cir. 1997); <u>Hill v. City of Scranton</u>, 411 F.3d 118, 125 (3d Cir. 2005). As will be argued hereafter, Marshall Williams submits that he meets the first two elements as a matter of law and that material issues of fact exist as to the third element.

**Point 2**

**It Is Admitted That No Claims May by Asserted for Incidents That Occurred Before October 24, 2011, However, Same Still Constitute Background Evidence in Support of His Present Grievances.**

The Defendants are correct that "any incidents complained of by Plaintiffs that occurred prior to October 24,2011 are barred by the applicable two (2) year statute of limitations." *Def. Brief pg. 19.* These incidents, however, are far from irrelevant to the present matter. This is because they establish a pattern of hostility against Marshall Williams on account of his nonunion status.  They also establish a custom of the City of Camden and its officials to placate the politically connected IBEW to the detriment of nonunion contractors. Thus Marshall Williams was told by the CFO of Camden that he would receive no work, even though he had been given a contract, because the granting of the contract to him displeased Donald Norcross, the then Business Agent of the Union. Thereafter he had to endure a continuing series of issues with the City Inspectors, who were former members of the IBEW, and which issues continued past October 24, 2011.

In <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 113, 122

S. Ct. 2061, 2072, 153 L. Ed. 2d 106 (2002), the Supreme Court specifically found in the context of a Title VII claim that while prior discrete acts maybe barred by the relevant limitations periods they nonetheless maybe utilized by a claimant as background evidence. "Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim." *Id.* Thus while Marshall Williams cannot seek redress for these prior acts, they still comprise (as well be argued later) an important component of his claims.

### Point 3

### Plaintiffs Did Engage in Constitutionally Protected Conduct

In spite of the pronouncements set forth above from <u>Smith v. Arkansas State Highway Emp., Local 1315</u>, *supra*, and <u>Labov v. Lalley</u>, *supra*, the Defendants contend that Marshall Williams did not engage in constitutionally protected conduct. They arrive at this, however, by conflating the status of Marshall Williams as a citizen with that of a public employee, which he is not, and his conduct as speech instead of an associational activity. That this is the case is demonstrated by a review of <u>Lee v. The Cnty. of Passaic</u>, No. 2:09-CV-5735 SDW, 2011 WL 3159130, the unpublished opinion upon which they rely. In that case the "protected conduct," with which the Court ultimately dealt, was speech by public employees. First the court cited to <u>Connick v. Myers</u>, 461 U.S. 138, 147, 103 S.Ct. 1684,

-18-

75 L.Ed.2d 708 (1983) for the proposition that "when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employees behavior." Lee v. The Cnty. of Passaic, *id* at 3. Then the Court held that speech involved a private grievance and was therefore not a protected activity under the First Amendment. *Id at 4.* Finally the Court noted that other than the speech, the plaintiffs "have not presented this Court with a valid union activity that amounted to constitutionally protected conduct as required for a claim for retaliatory action due to freedom of association. Thus, these claims also fail." *Id.*

In the present case Marshall Williams has in fact presented a valid associational activity - the conduct of leaving a union and working nonunion. As a result the Plaintiff has established the first element of his claim.

**Point 4**

**The Defendants Do Not Argue That the Actions of Which the Plaintiff Complains Could Not Constitute Retaliation.**

In order to meet the second element of a claim such as presented by Marshall Williams it must be established "that defendants' retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her constitutional rights." Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir.2006) (citing Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir.2003). It is submitted that actions such those of the inspectors in this case which adversely effected the profits of Marshall Williams' business, by in part demeaning him before his customers, meet this criteria. Apparently the Defendants by not claiming otherwise agree with this proposition. Therefore Marshall Williams has established as a matter of law the second element of his claim.

**Point 5**

**Material Issues of Fact Exist as to Whether There Was a Causal Connection Between the Protected Activity and the Retaliatory Actions.**

In regard to the third element the Third Circuit in Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007) set forth the following guidelines:

> "To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of

-20-

antagonism coupled with timing to establish a causal link. See Krouse v. American Sterilizer Co., 126 F.3d 494, 503-*04 (3d Cir.1997); Woodson v. Scott Paper Co., 109 F.3d 913, 920-*21 (3d Cir.1997). In the absence of that proof the plaintiff must show that from the "evidence gleaned from the record as a whole" the trier of the fact should infer causation. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000).[2]

In this case the record as a whole, which includes background evidence from before October 24, 2011, reflects the following evidence raising an inference of causation:

1. Marshall Williams received a contract to do "on demand" work for the City but never received any such work;

2. When he questioned the CFO about the work that high level official admitted that it was due directly to his nonunion status which had triggered the ire of Donald Norcross;

3. Since that occurred the political status of Donald Norcross as grown exponentially;

4. Since that time the Plaintiff has had persistent issues with the City's inspectors all of whom are former IBEW members;

5. Over the years said inspectors have made comments about the Plaintiff's nonunion status;

6. Assuming as we must that the inspectors made disparaging remarks to the Plaintiff's customers, they have provided no explanation for such remarks;

7. It is established beyond issue that the inspectors would

---

[2]Specifically in Farrell v. Planters Lifesavers Co., *id,* the Court stated the evidence reflecting upon causation, "is not limited to timing and demonstrative proof, such as actual antagonistic conduct or animus. Rather, it can be other evidence gleaned from the record as a whole from which causation can be inferred."

reject work without properly citing the reasons therefore and no explanation for such conduct has been forthcoming;

8.    Assuming as we must that the inspectors suggested that customers of the Plaintiff use other contractors, they have provided no explanation for such statements; and,

9.    The inspectors admit they would fail work performed by the Plaintiff and then when confronted by Plaintiff change their position which raises the question of why presumably competent government officials would have failed the work in the first place.

It is therefore submitted that material issues of fact exist as to causation and that same must be resolved by a jury.

### Point 6

**Giving the Plaintiff All Reasonable Inferences a Jury Could Find That CO Rizzo and Dir. Afanador as Supervisors Acquiesced in the Conduct of the Inspectors.**

"Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). It is beyond issue that Marshall Williams complained to the supervisors as to the treatment he received from the inspectors. Although he didn't say the magical words that "I think they are doing this to me because I'm nonunion," the specifics of what they were doing, if not the motive, was set forth. It also is a fact that the supervisors claim they looked into what Marshall Williams was gripping about but apparently got no specific answers and conducted a most cursory investigation. In the case of Dir. Afanador she has a remarkable inability to even recall what occurred.

-22-

It is submitted that at the very least where a supervisor receives allegations of wrong doing and then never gets to the bottom of them or avoids getting to the bottom, then the inference arises that in her mind there must be a realization that whatever, the reasons for the conduct, those reasons are probably illegal. Furthermore another inference is that after inquiry the supervisor actually learns of the real reasons and then amnesia sets in. Which ever case such conduct by supervisors constitutes knowledge and acquiescence.

**Point 7**

**The Individual Defendants Are Not Entitled to Qualified Immunity.**

The defense of Qualified Immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). Whether a right is clearly established is determined by whether "its outlines are sufficiently clear that a reasonable officer would understand that his actions violate the right." <u>Sterling v. Borough of Minersville</u>, 232 F.3d 190, 193 (3rd Cir. 2000). Although the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right, "this is not to say that an official action is protected by qualified immunity unless the very action in

-23-

question has been previously held unlawful." <u>Anderson v. Creighton</u>, 483 U.S. 635, 639 (1987); since to require precise factual correspondence between a case at issue and a previous case would permit "officials one liability-free violation of a constitutional or statutory requirement." <u>Assaf v. Fields</u>, 178 F3d 170, 178 (3rd Cir. 1999).

As set forth previously the law is clearly established that decisions to be in or not in a union involve associational rights protected by the First Amendment. That being the case any reasonable public official should know that he cannot take actions against a citizen on account of the citizen's status in regard to a union. The Defendants are therefore not entitled to Qualified Immunity.

**Point 8**

**Material Issues of Fact Exist as to Whether Camden Had a Custom of  Hindering Nonunion Contractors Who Had Previously Been Union Members.**

To impose liability upon a governmental entity a plaintiff must then establish that, "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," <u>Monell v. Department of Social Services of City of New York</u>, 436 U.S. 658, 690 (1978); or, Involves the acts of a government employee that "may be deemed to be the result of a policy or custom of the governmental entity for whom the

-24-

employee works, thereby rendering the entity liable under § 1983." Natale v. Camden County Correctional Facility, 318 F.3d 575, 584 (3rd Cir., 2003).  In that latter circumstance of employee action there are three situations where such action may be deemed that of the entity. "The first is where the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy.  The second occurs where no rule has been announced as policy but federal law has been violated by an act of the policymaker itself. Finally, a policy or custom may also exist where the policymaker has failed to act affirmatively at all, the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need." Natale v. Camden County Correctional Facility, id.

In this case the first and third situations referred to in Natale are present. Based upon the statements of the CFO a jury could conclude that high level Camden officials implemented a policy adverse to nonunion contractors so as to avoid the displeasure of Donald Norcross.  In addition a jury could conclude that the supervisors failure to address the Plaintiff's long standing complaints constituted a practice likely to result in the violation of constitutional rights.  As a result the City should not be

dismissed from this matter.

## CONCLUSIONS

For the foregoing reasons, it is respectfully requested that the Court deny Defendant's Motion for Summary Judgment.


Respectfully submitted,

F. MICHAEL DAILY, JR., LLC
Attorney for the Plaintiff

*s/F. Michael Daily, Jr.*

By:_____
F. Michael Daily, Jr.

Dated: April 20, 2015

-26-