UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NICO ELECTRICAL CONTRACTOR, INC., and MARSHALL B. WILLIAMS,<br>    Plaintiffs,<br><br>    v.<br><br>CITY OF CAMDEN, EUGENE EMENECKER, WILLIAM REVAITIS, JAMES RIZZO, and IRAIDA AFANADOR,<br>    Defendants. | **CIVIL ACTION:**<br>**1:13-cv-06353 (JEI-AMD)** |

**BRIEF IN REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

Daniel E. Rybeck, Esq.
**WEIR & PARTNERS LLP**
*A Pennsylvania Limited Liability Partnership*
The Liberty View Building
457 Haddonfield Road, Suite 420
Cherry Hill, NJ 08002
T: 856-662-1018
F: 856-662-1592
Attorneys for Defendants

**TABLE OF CONTENTS**

TABLE OF CITATIONS ................................................................................................ i

LEGAL ARGUMENT .................................................................................................... 1

POINT I.       REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS'
               INITIAL STATEMENT OF MATERIAL FACTS ..................................... 1

POINT II.      PLAINTIFFS HAVE PRODUCED NO EVIDENCE OF
               INCIDENTS PRIOR TO OCTOBER 24, 2011 OTHER THAN
               UNSUBSTANTIATED COMMENTS FROM THE
               CITY OF CAMDEN CFO IN 2002 .................................................................. 4

POINT III.     PLAINTIFFS CANNOT PRODUCE ANY EVIDENCE
               TO SUPPORT THEIR CLAIMS OF A VIOLATION
               OF THEIR 1ST AMENDMENT RIGHT TO ASSOCIATE ......................... 7

               A. Plaintiffs Did Not Engage in Constitutionally Protected Conduct ........... 7

POINT IV.      DEFENDANTS DID ARGUE IN THEIR INITIAL BRIEF
               THAT THE ACTIONS COMPLAINED OF BY PLAINTIFFS
               COULD NOT CONSTITUTE RETALIATION .......................................... 8

POINT V.       PLAINTIFFS CANNOT ESTABLISH A CAUSAL CONNECTION
               BETWEEN THEIR NONUNION STATUS AND CLAIMED
               RETALIATORY ACTIONS ........................................................................ 8

POINT VI.      THERE IS NO EVIDENCE THAT CO RIZZO OR
               DIR. AFANADOR IN THEIR ROLES AS SUPERVISORS
               ACQUIESCED IN THE ALLEGED WRONGFUL CONDUCT
               OF THE INSPECTORS ................................................................................ 10

POINT VII.     THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO
               QUALIFIED IMMUNITY .......................................................................... 11

POINT VIII.    ALL CLAIMS AGAINST THE CITY OF CAMDEN
               MUST BE DISMISSED .............................................................................. 11

CONCLUSION ................................................................................................................ 12

## TABLE OF CITATIONS

**CASES**

De LaTorre v. Lockheed Martin Corp., 2014 WL 2931268
(D.N.J. June 30, 2014) .................................................................................... 2, 3

Farrell v. Planters Lifesavers Co., 206 F.2d 271 (3d Cir. 2000) ........................... 6

Labov v. Lalley, 809 F.2d 220 (3d Cir. 1987) ....................................................... 7

Smith v. Arkansas State Highway Emp., Local 1315,
441 U.S. 463, 99 S.Ct. 1826, 60 L. Ed 2d 360 (1979) ............................................ 7

U.S. v. Reynolds, 715 F.2d 99 (3d Cir. 1983) ........................................................ 2

**RULES AND STATUTES**

Fed.R.Civ.P. 56 ....................................................................................................... 2

Fed.R.Civ.P. 12(b)(6) ............................................................................................. 7

L.Civ.R. 56.1 ........................................................................................................... 1

L.Civ.R. 56.1(a) ................................................................................................... 2, 3

**LEGAL ARGUMENT**

**POINT I.     REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' INITIAL STATEMENT OF MATERIAL FACTS**

While Plaintiffs have not furnished a supplemental statement of disputed material facts pursuant to L.Civ.R. 56.1, Defendants aver it is important to reply to a number of Plaintiffs' responses to Defendants' initial statement of material facts.  In ¶12, Plaintiffs admit that ESCO Revaitis testified that he never had any conversations with CFO Feliciano, but characterizes said testimony as a "self serving statement that calls for a credibility determination and hence a 'fact' that a jury would not be required to accept."  Such a response is in violation of L.Civ.R. 56.1 as Plaintiff does not cite to the record for any document disputing this fact; and his reference to a jury not having to accept this testimony is of no moment as for all intents and purposes in the matter *sub judice*, this is an undisputed fact.

Plaintiffs dispute the cited testimony set forth in ¶23 that other than the aforementioned 3-4 occasions when ESCO Revaitis asked Williams how Williams was dealing with the union between 2002 and 2004, ESCO Revaitis has never mentioned the union to Williams; Plaintiffs cite to 111:13-17 of Defendants' Exhibit 2, but ignores the follow-up questions contained in 111:18 to 112:6 that there were no other comments other than the 3-4 occasions.  It was specifically asked "[a]ny other time since 2004 has Mr. Revaitis ever mentioned the union to you?" with Plaintiff responding unambiguously "[n]o.  I try to avoid him.  I try to avoid them guys."  Ibid.

Likewise, Plaintiffs dispute in ¶24 that "Plaintiff did not concede that Emenecker's two comments constituted the sum total of his disparate treatment evidence" is specious.  Williams was asked what evidence he has that the disparate treatment he believes he was receiving from Insp. Emenecker was a result of Insp. Emenecker not wanting Plaintiffs to perform nonunion

1

work in Camden, and Williams' only responses were the two (2) comments.  Id. at 109:1 to 111:6.  Plaintiffs have cited to no other portion of the record where Williams has stated there was additional evidence that he claims supports his allegation.

Plaintiffs' response to ¶25 is in violation of L.Civ.R. 56.1(a) as it contains legal argument that the question "Have you ever had any problems with the union since being awarded this bid?" is unduly vague.  See De LaTorre v. Lockheed Martin Corp., 2014 WL 2931268 (D.N.J. June 30, 2014) (Kugler) (advance of legal arguments inappropriate in parties' respective Rule 56.1 statements).  Moreover, it is respectfully submitted that the question cannot be any more straightforward, and Plaintiffs do not cite to any portion of the record contrary to this fact.

While the October 8, 2013 statement of Ayana Jordan referenced in ¶60, as well as the verbal statements of Ms. Jordan referenced in ¶¶104-107, are not affidavits or declarations, the statements are admissible in the context of why Dr. Afanador found no wrongdoing on the part of ESCO Revaitis or Insp. Emenecker as a result of what Ms. Jordan stated.  See U.S. v. Reynolds, 715 F.2d 99 (3d Cir. 1983). The statement of Ms. Holland referenced in ¶71 is admissible under Fed.R.Civ.P. 56 as Williams formally adopted the contents of the same in his deposition testimony.  See Exhibit 12 at 45:24 to 46:3.

The statements of fact under §4 1207 Mt. Ephraim Avenue in ¶¶74-81 are inexplicably disputed by Plaintiffs that Williams did not prepare a statement for Israel "Tony" Miller to sign, or what Mr. Miller's legal first or last name is.  Williams admitted that Mr. Miller's name is Israel Miller and his nickname is Tony, and that Williams "prepared [the statement] for him" to sign.  See Exhibit 2 at 208:9-23.

In regard to George Cassidy never being a member of IBEW, Plaintiffs erroneously characterize his testimony as "he did not believe that Cassidy had every been a member of the

2

electrical union" in response to ¶79.  However, Williams plainly states "[George Cassidy] was never a member of the electrical union."  See Exhibit 12 at 19:3-8.  Furthermore, Plaintiffs dispute ¶80 that he conceded that his non-union status was not an issue for this complaint, yet his deposition testimony is "[t]he issue pertaining to the union was never the issue.  Id. at 19:9 to 20:6.

Plaintiffs are correct that Exhibit 17, referenced in ¶82, is incomplete as it does not include six (6) pages of attachments.  The reason the attachments are not included is due to Plaintiffs never producing the same, and Williams not being able to recall what was attached to the document that he authored.  Id. at 118:25 to 120:16.

It is contended by Plaintiffs in ¶91 "that the inspectors had failed properly completed jobs several times, and each time they gratuitously told the customer to find a better contractor next time because Williams was not a good electrical contractor" and they cite to Exhibit 2 at 99:30-102:20 in support thereof.  Nowhere in the cited portion of the record does Williams state each time the inspectors told the customer to find a better contractor next time.  Additionally, Williams claims the aforementioned portion of his deposition testimony also states he suffered damages to his reputation caused by the inspectors' official misconduct.  Again, nowhere in this testimony does Williams accuse the inspectors of engaging in official misconduct.

Plaintiffs' response to ¶98 is in violation of L.Civ.R. 56.1(a) as it contains legal argument when they characterize Dir. Afanador's testimony as unreliable, vague, speculative and qualified by multiple admissions as to her inability to remember.  See De LaTorre, supra.  The same analysis applies to Plaintiff's response to ¶109 that Dir. Afanador's investigation was not complete and impartial.

3

Plaintiffs' characterization in ¶99 that the issue being litigated is whether the initial inspection failure was official misconduct motivated by anti-union animus is incorrect. This is not a criminal trial wherein Defendants have been accused of official misconduct in Plaintiffs' Complaint. Also, Plaintiffs concede in ¶90 that Messrs. Verbos and Gangeruso determined in their informal DCA investigation that the actions of the inspectors did not rise to a level that required action by the DCA.

It is "admitted" in Plaintiffs' response to ¶101 that Dir. Afanador "attempted to place obstacles in front of any investigation." Defendants' statement of fact in ¶101 does not even remotely state anything about Dir. Afanador "attempting to place obstacles in front of any investigation." Nor do Plaintiffs cite to the record in support of their response in violation of L.Civ.R. 56.1.

**POINT II.    PLAINTIFFS HAVE PRODUCED NO EVIDENCE OF INCIDENTS PRIOR TO OCTOBER 24, 2011 OTHER THAN UNSUBSTANTIATED COMMENTS FROM THE CITY OF CAMDEN CFO IN 2002**

While Plaintiffs concede that any and all claims are time barred prior to October 24, 2011, they submit that evidence of prior alleged retaliatory acts outside the statute of limitations constitute background evidence in support of their present grievances. It is further submitted by Plaintiffs that incidents outside the statute of limitations establish a pattern of hostility against Williams and his company on account of his nonunion status, as well as a custom of the City of Camden and its officials to placate the politically connected IBEW to the detriment of nonunion contractors. Interestingly, Plaintiffs only cite to one specific occurrence in 2002 in support of their claim that "he had to endure a continuing series of issues with the City Inspectors" thereafter that continued past October 24, 2011.

The statement on page 17 of Plaintiffs' brief that Williams was told by CFO Feliciano that Plaintiffs would receive no work because the granting of the contract to Plaintiffs displeased Mr. Norcross is not supported by the record. Williams did not testify that CFO Feliciano stated Plaintiffs would receive no work; it is an undisputed fact in ¶7 that shortly after being awarded the 2002 Contract, Williams alleges he received a telephone call from then CFO Feliciano wherein CFO Feliciano allegedly stated he [CFO Feliciano] received a telephone call from Mr. Norcross.  During the conversation between Mr. Norcross and CFO Feliciano, Mr. Norcross purportedly stated he [Mr. Norcross] wanted the 2002 contract to be rebid and that he [Mr. Norcross] did not want Williams performing any work for the City of Camden.  Plaintiffs have admitted the facts of ¶7.  Nowhere in this conversation do Plaintiffs allege CFO Feliciano told Williams that Plaintiffs would not receive any work.  Plaintiffs merely allege that Mr. Norcross stated he [Mr. Norcross] wanted the contract be rebid; it is of note that Mr. Norcross' alleged demand for a rebid did not take place as there is no evidence of record that the contract was rebid.

Williams inferred, not CFO Feliciano, from the statements attributed to Mr. Norcross that Plaintiffs were not to perform work in the City of Camden was the consequence of Williams' belief that Mr. Norcross was "pissed off" that Williams left IBEW; this is pure speculation by Williams.  Williams does not allege that IBEW was ever mentioned during this conversation between Mr. Norcross and CFO Feliciano.  Consquently, CFO Feliciano could not have inferred the purported conversation had anything to do with IBEW, and he clearly did not as he would not have inquired what the problem between Williams and Mr. Norcross was.  Plaintiffs' footnote on page 16 that it is a matter of judicial notice that Mr. Norcross became a member of the New Jersey legislature conveniently fails to acknowledge that the above conversation supposedly took

place in 2002, approximately eight (8) years before Mr. Norcross became a member of the New Jersey General Assembly.  There is not a scintilla of evidence that Mr. Norcross has any involvement with Plaintiffs disputes with the named Defendants.

The following are the dates in the record before this Court of the incidents Plaintiffs claim some kind of wrongdoing by City of Camden officials:

1. 1207 Mt. Ephraim Ave: November 2011; See Exhibit 7 at 5.
2. 931 S. 7th St: December 2011; Ibid.
3. 1302 Browning St: December 2012; Ibid.
4. 1571 S. 8th St: August 2013; see Exhibit 15.

Notably absent from the record are any other incidents that Plaintiffs reference as a "continuing series of issues with the City Inspectors."

Williams left IBEW in 1998.  ESCO Revaitis and Insp. Emenecker have been City employees since 1996 and 2004, respectively, but there are no specific incidents set forth by Plaintiffs of misconduct by City inspectors from the time of the comments ascribed to Mr. Norcross by Plaintiffs in 2002 and 1207 Mt. Ephraim Ave. in November 2011.  This lack of temporal proximity is significant as proof that Plaintiffs' claims have no merit.  See Farrell v. Planters Lifesavers Co., 206 F.2d 271, 280 (3d Cir. 2000) (temporal proximity alone is insufficient to establish the necessary causal connection when the temporal relationship is not "unusually suggestive").  Thus, Plaintiffs' citation to *Nat'l R.R. Passenger Corp. v. Morgan* has no bearing in this matter as the only background evidence submitted by Plaintiff, the 2002 conversation, is so remote in time to the specific incidents in dispute that it cannot establish a causal connection.

**POINT III.   PLAINTIFFS CANNOT PRODUCE ANY EVIDENCE TO SUPPORT THEIR CLAIMS OF A VIOLATION OF THEIR 1ST AMENDMENT RIGHT TO ASSOCIATE**

A.   <u>**Plaintiffs Did Not Engage in Constitutionally Protected Conduct**</u>

Plaintiffs quote <u>Smith v. Arkansas State Highway Emp., Local 1315</u>, 441 U.S. 463, 465, 99 S.Ct. 1826, 60 L. Ed 2d 360 (1979), for the proposition that "[t]he public employee surely can associate and speak freely and petition openly, and he is protected by the First Amendment from retaliation for doing so."  As in *Lee v. The Cnty. of Passaic*, cited in Defendants' initial brief, the *Smith* Court also found the that plaintiffs were not engaging in protected union activity, with the *Smith* plaintiffs' allegation being merely that the defendants ignored the union and nothing more. <u>Smith</u>, <u>supra</u> at 466.

The Third Circuit decision in <u>Labov v. Lalley</u>, 809 F.2d 220, 222-23 (3d Cir. 1987) is also cited by Plaintiffs, but this case also provides no guidance in the instant matter.  In *Labov*, the Third Circuit was reviewing the Eastern District of Pennsylvania District Court's dismissal of the plaintiffs' complaints pursuant to a Fed.R.Civ.P. 12(b)(6) motion.  The *Labov* Court overruled the District Court's dismissal, holding that the plaintiffs' allegation in their complaint that the Sheriff's Department conspired to deprive the plaintiffs of their right to form a union was sufficient to survive a 12(b)(6) motion.  <u>Ibid</u>.  *Labov* is distinguishable from the instant matter as Defendants have file for summary judgment after the close of discovery, and Plaintiffs cannot prove from the record that they have engaged in a constitutionally protected activity.  Plaintiffs' grievance with the inspections in the City of Camden since 2011 are personal in nature, and in no way have any relation Williams leaving IBEW in 1998

**POINT IV. DEFENDANTS DID ARGUE IN THEIR INITIAL BRIEF THAT THE ACTIONS COMPLAINED OF BY PLAINTIFFS COULD NOT CONSTITUTE RETALIATION**

It is confounding that Plaintiffs contend in Point 4 of their opposition brief that Defendants do not argue that the actions which Plaintiffs complain could not constitute retaliation. In § III.B. on page 27 of Defendants' initial brief it was argued that Plaintiffs "cannot prove that they suffered any retaliatory action" as every single one of Plaintiffs' has been approved by the City of Camden. Plaintiffs submit the inspectors' actions adversely effected the profits of Plaintiffs' business, by in part demeaning Williams before his customers. However, the record is devoid of any specific evidence of a loss of profits. An assertion by Plaintiff's counsel that income was lost does not constitute evidence upon which can be relied. Based on the foregoing, Plaintiffs have not met their burden in proving an ascertainable loss that would constitute retaliation for exercising their 1st Amendment right not to associate.

**POINT V. PLAINTIFFS CANNOT ESTABLISH A CAUSAL CONNECTION BETWEEN THEIR NONUNION STATUS AND CLAIMED RETALIATORY ACTIONS**

Point 5 of Plaintiffs' brief states that material issues of fact exist as to whether there was a causal connection between the protected activity and the retaliatory actions. In support, Plaintiffs cite, *inter alia*, that CFO Feliciano admitted that Williams not receiving work pursuant to the 2002 Contract was "due directly" to Williams' nonunion status. As discussed above, this is a mischaracterization of Williams' testimony. It was Williams' who made this speculative connection, not CFO Feliciano.

The alleged comments by the inspectors are benign and not evidence of a causal connection, and Plaintiffs claim that they evidence a causal connection should be disregarded as a result thereof. The claimed disparaging remark to Mr. Miller that that he should hire Mr.

8

Cassidy, another **<u>nonunion</u>** electrician, cannot be said to evidence a casual connection as it makes no sense that if the inspectors truly were attempting to discourage the citizens of Camden from hiring nonunion electricians, they would not recommend another nonunion electrician.

On page 22 of Plaintiffs' opposition brief, it is claimed that the inspectors have not provided any explanation for their reasons in not initially passing each respective job. To the contrary, for every job that was not initially approved, but thereafter did receive approval, a legitimate non-retaliatory reason was set forth by Defendants. 1302 Browning St. involved a dispute about whether the existing service could be cut. As stated by Mr. Rizzo, this matter was simply a difference of opinion, with the matter being resolved when Insp. Emenecker passed the job.

931 S. 7th St. involved a circuit breaker tripping. Plaintiffs' claim ESCO Revaitis didn't look into Plaintiffs' work with enough detail to find out whether the tripping was a result of old existing work or something Plaintiffs did. After speaking with Williams, ESCO Revaitis decided the breaker would not reset because of a direct short, so he passed Plaintiffs' job and delivered the approval to Ms. Jordan. This is clearly another difference of opinion, which was ultimately decided in Plaintiffs' favor.

The problem at 1571 S. 8th St. was the result, according to Plaintiffs, of a service head becoming detached between the time of Plaintiffs' work and the inspection. Plaintiffs believe this was due to inclement weather. There would be no way for Insp. Emenecker to determine that a service head became detached post-Plaintiffs' work, and Plaintiffs have never claimed the inspectors should have realized the same.

In light of the above, Plaintiffs have produced no evidence to establish a causal connection and any claimed retaliation and their nonunion status.

**POINT VI.     THERE IS NO EVIDENCE THAT CO RIZZO OR DIR. AFANADOR IN THEIR ROLES AS SUPERVISORS ACQUIESCED IN THE ALLEGED WRONGFUL CONDUCT OF THE INSPECTORS**

Plaintiffs concede nothing was reported to either CO Rizzo or Dir. Afanador that Plaintiffs believed they were suffering retaliation as a result of their nonunion status. Nor are Plaintiffs claiming that either were ever aware of the nonunion issue. On this fact alone, no first amendment liability can be imposed upon either CO Rizzo or Dir. Afanador as it would be impossible for either of them to acquiesce in retaliating against Plaintiffs for not being in IBEW if that had no knowledge of the issue.

Plaintiffs' theory of liability against CO Rizzo and Dir. Afanador is that they conducted a "most cursory investigation." Yet again, Plaintiffs allege more than a general allegation and provide specifics, e.g., what was lacking in the investigation of Plaintiffs' claims. Every single one of Plaintiffs' jobs was approved. Plaintiffs never submitted any more than generalities for 1302 Browning St., and CO Rizzo could not sustain any allegations based upon same. Plaintiffs maintained an adversarial posture from the outset of the investigation, by Williams' own admission. Ms. Jordan inculpated Williams, and Mr. Miller would not participate in the investigation; Mr. Miller's matter also has no involvement with Plaintiffs' nonunion status as another nonunion contractor was supposedly recommended to Mr. Miller. A mere claim of a cursory investigation, without further explanation, cannot impose supervisory liability upon either CO Rizzo or Dir. Afanador. Likewise, for the reasons set forth above, Dir. Afanador's deposition testimony speaks for itself as she unequivocally stated the bases for the conclusions she reached.

**POINT VII.   THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY**

For the reasons set forth in Defendants' initial brief, ESCO Revaitis and Insp. Emenecker are entitled to qualified immunity. Additionally, Plaintiffs' admission that CO Rizzo and Dir. Afanador had no notice that Plaintiffs were claiming they were being retaliated against as a result of their nonunion status entitles each of them to qualified immunity. Without knowledge of such an accusation, it would be impossible for either of them to know their actions were unlawful by condoning the same.

**POINT VIII.  ALL CLAIMS AGAINST THE CITY OF CAMDEN MUST BE DISMISSED**

It is argued by Plaintiffs on page 25 of their opposition brief that the reason liability should be imposed upon the City of Camden is twofold: (1) high level City officials implemented a policy adverse to nonunion contractors so as to avoid the displeasure of Mr. Norcross; and (2) supervisors' failure to address Plaintiffs' long standing complaints constituted a practice likely to result in the violation of constitutional rights.

Theory #1 fails as Plaintiffs have presented not a scintilla of evidence that union workers received the work Plaintiffs claim they were entitled pursuant to the 2002 Contract. Nor have Plaintiffs claimed or identified other nonunion electricians who have experienced retaliation similar to that claimed by Plaintiffs at any point in time; according to Plaintiffs, a fellow nonunion electrician Mr. Cassidy was even receiving recommendations by City inspectors. Furthermore, no policymaker has ever been identified by Plaintiffs; Mr. Norcross has never been a City of Camden official and had no authority to set policy regarding City electrical work in the early 2000s. Lastly, there is no causal link between the 2002 Contract for electrical work to be

performed by Plaintiffs on behalf of the City, and problems Plaintiffs had with inspectors almost a decade later.

Theory #2 fails for the reasons discussed above that Plaintiffs concede they did not report their nonunion status as being a motivating factor to either CO Rizzo or Dir. Afanador as a motivating factor the retaliation Plaintiffs claim to have suffered. It is therefore respectfully submitted that Plaintiffs' claims against the City of Camden be dismissed as Plaintiffs cannot prove an unconstitutional policy or custom against nonunion electricians pursuant to *Monell* and its progeny.

## CONCLUSION

For all of these reasons, it is respectfully submitted that the Motion for Summary Judgment of Defendants should be granted and Plaintiffs' claims be dismissed in their entirety.

**WEIR & PARTNERS LLP**

/s Daniel E. Rybeck
DANIEL E. RYBECK, ESQUIRE

Dated: April 27, 2015

## CERTIFICATION OF FILING AND SERVICE

On April 27, 2015, I filed the herein Motion for Summary Judgment with the Court via ECF, and a copy served upon Plaintiff's counsel by ECF.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

                **WEIR & PARTNERS LLP**

                /s Daniel E. Rybeck
                DANIEL E. RYBECK, ESQUIRE

Dated: April 27, 2015